# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN W. MUNDO,<br><br>    Plaintiff,<br><br>    v.<br><br>TAYLOR, et al.,<br><br>    Defendants. | Case No. 1:15-cv-01681 DAD DLB PC<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND<br><br>THIRTY-DAY DEADLINE |

Plaintiff Jonathan W. Mundo ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation. Plaintiff is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983, filed on November 5, 2015. After the Court granted Plaintiff's motion to amend, he filed a Third Amended Complaint on January 19, 2016. He names Pleasant Valley State Prison ("PVSP") Classification Staff Representative A. Taylor, Centinela State Prison ("CSP") Correctional Counselor F. Salgado, CSP Correctional Counselor Raybon and CSP Facility Captain Arias as Defendants.

**A.   SCREENING STANDARD**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

1

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.     FACTUAL ALLEGATIONS**

Plaintiff is currently incarcerated at California Correctional Institution in Tehachapi, California.

Plaintiff alleges that on 2014, at PVSP D-Yard, he was approached by his friend, another inmate. He informed Plaintiff that he overheard Inmate Amaya (also known by his monikor

///

1  "sneaks") say he was going to try and kill Plaintiff because of Plaintiff's brother's involvement in a
2  gang feud.
3       A few minutes later, Inmate Amaya and another inmate asked Plaintiff if he wanted to play
4  basketball.  Plaintiff declined and began walking to the other side of the yard to wait for the tower
5  officer to recall the yard.
6       Once the yard was recalled, Plaintiff walked towards the medical office and told the officer
7  coming out of the office that his life was in danger and he could no longer program safely on D-
8  Yard.
9       The officer handcuffed Plaintiff and escorted him to the program office, where he was
10 interrogated about the incident.
11      Plaintiff was then taken to Administrative Segregation ("Ad-Seg") and interviewed by two
12 IGI officers.  The officers assured Plaintiff that Inmate Amaya would be placed on his offender
13 separation list using a CDCR 812 form.
14      The next day, Plaintiff was transferred to A-Yard, where he was told he had no listed
15 enemies.  Plaintiff programmed safely on A-Yard for several months.
16      On May 15, 2015, Plaintiff was endorsed to CSP through an auditor action authored by
17 Defendant Taylor.  Defendant Taylor noted that Plaintiff had offender separation alerts under
18 "enemy concerns."
19      Plaintiff arrived at CSP on May 29, 2015.
20      On June 9, 2015, Plaintiff was called into the program office where Defendants Salgado,
21 Raybon and Arias were waiting to commence a unit classification committee hearing.  During the
22 hearing, Defendants Salgado, Raybon and Arias noted, both in orally and in writing, Plaintiff's
23 enemy concerns and other factors relevant to Plaintiff's case file.
24      After Plaintiff walked into the hallway, Defendant Salgado said, "You better watch your
25 back for snitching motherfucker."  ECF No. 20, at 4.  Plaintiff kept walking and pretended not to
26 hear her remark.
27      On July 7, 2015, while Plaintiff was in the bathroom, an inmate approached and said,
28 "Sneaks has a message for you" and then punched Plaintiff in the nose and walked away.  ECF No.

3

20, at 4. Prior to this incident, Plaintiff had witnessed the inmate who punched him ingest heroin. The inmate told Plaintiff that he wanted him to help him sell drugs. Plaintiff declined.

Plaintiff washed his face because his nose was bleeding.

Plaintiff did not inform the officials immediately of the incident, but told them the next day.

At 7:00 p.m.-8:00 p.m., while Plaintiff was in his bunk, he heard a knock on the cell door and noticed a kite slide under his door. Plaintiff read the kite, which said, "If you don't sell the drugs for us we're going to kill you." ECF No. 20, at 5.

At midnight, Plaintiff informed the graveyard officer that he could no longer program on that yard, and that he feared for his safety.

At 6:00 a.m. the next morning, Plaintiff was taken to the program office and interrogated about the incident. Plaintiff told the officers that he had seen the inmate doing heroin. The officials asked Plaintiff if he knew that Inmate Amaya was "simultaneously on the yard" with him, and Plaintiff said, "no." ECF No. 20, at 5.

The officers called Defendant Raybon and asked her to fix Plaintiff's offender separation alerts and she said, "okay, okay." ECF No. 20, at 5.

The officers asked Plaintiff if he knew that Inmate Amaya was behind the assault, and he said, "yes." ECF No. 20, at 5.

Plaintiff alleges that he had a psychological breakdown and the officers called in a physician. The physician said that the events had caused Plaintiff to have a mental disorder, and that he could not be housed in Ad-Seg at CSP. The physician also said that Plaintiff needed a transfer to an institution that could accommodate his mental health care.

Plaintiff contends that he now has to take sixty milligrams of Paroxetine for his mental health issue, and he sees a psychologist on a regular basis. He states that he has been traumatized by these events and can no longer function in a normal prison setting.

## C.   **DISCUSSION**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with

food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S.Ct. 1970 (1994) (quotations omitted). Prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners, because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. Farmer, 511 U.S. at 833-34 (quotation marks omitted); Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir. 2009); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).

However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious harm. Farmer, 511 U.S. at 834, 841 (quotations omitted); Clem, 566 F.3d at 1181; Hearns, 413 F.3d at 1040.

Plaintiff attempts to establish liability against Defendants by suggesting that they failed to protect him from an assault by Inmate Amaya. He does not, however, sufficiently link any Defendant to the alleged violation.

Pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121-23 (9th Cir. 2012); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010), but Plaintiff's claims must be facially plausible to survive screening, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

"Direct, personal participation is not necessary to establish liability for a constitutional violation." Wong v. United States, 373 F3d 952, 966 (9th Cir. 2004). "'The requisite causal connection can be established . . . also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The critical question is whether it

1 was reasonably foreseeable that the actions of the particular . . . defendants would lead to the rights
2 violations alleged to have occurred . . . ." Id.

3     Plaintiff contends that Defendant Taylor endorsed a transfer to CSP, and that he knew of
4 Plaintiff's enemy concerns. However, even though he may have known that Plaintiff had enemy
5 concerns, there are no facts to suggest that Defendant Taylor knew that a substantial risk of harm
6 awaited Plaintiff at CSP.

7     Similarly, Plaintiff suggests that Defendants Salgado, Raybon and Arias knew of his enemy
8 concerns during his classification committee hearing upon his arrival at CSP. Again, while they may
9 have known of his enemy concerns, there are no allegations to suggest that they knew Plaintiff faced
10 a serious risk of substantial harm. Plaintiff alleges that Defendant Salgado told him to "watch his
11 back," but this does not establish the requisite causal connection. He also alleges that Defendant
12 Raybon said, "okay, okay," when told to fix Plaintiff's separation alerts, but this, too, is insufficient
13 to link Defendant Raybon to the assault.

14     Despite Plaintiff's allegations that he was ultimately assaulted at the instruction of Inmate
15 Amaya, he does not allege that any Defendant knew that Inmate Amaya was on the yard to which
16 Plaintiff was assigned. He also fails to connect any Defendant with any action that may have led to
17 the eventual assault, and he does not demonstrate that any Defendant knew of a substantial risk of
18 harm and failed to prevent it.

19     Plaintiff therefore fails to state a claim against any Defendant. He will be permitted to
20 amend.

21 **D.**   **CONCLUSION**

22     Plaintiff's complaint does not state any claims for relief against any Defendants.

23     Plaintiff has not previously been provided with notice of the deficiencies in his claims and
24 the Court will provide Plaintiff with the opportunity to file an amended complaint, if he believes, in
25 good faith, he can cure the identified deficiencies. Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir.
26 2012); Lopez, 203 F.3d at 1130-31; Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If
27 ///
28 ///

1  Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims in his
2  amended complaint. George, 507 F.3d at 607.

3      If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but under
4  section 1983, it must state what each named defendant did that led to the deprivation of Plaintiff's
5  constitutional rights and liability may not be imposed on supervisory personnel under the theory of
6  respondeat superior, Iqbal, 556 U.S. at 676-77; Starr, 652 F.3d at 1205-07.  Although accepted as
7  true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative
8  level. . . ."  Twombly, 550 U.S. at 555 (citations omitted).

9      Finally, an amended complaint supercedes the original complaint, Lacey v. Maricopa
10 County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without
11 reference to the prior or superceded pleading," Local Rule 220.

12     Accordingly, it is HEREBY ORDERED that:

13     1.    The Clerk's Office shall send Plaintiff a complaint form;

14     2.    Within thirty (30) days from the date of service of this order, Plaintiff must file an
15     amended complaint curing the deficiencies identified by the Court in this order, or
16     notify the Court that he does not wish to amend;

17     3.    <u>If Plaintiff fails to comply with this order, this action will be dismissed, without
18     prejudice, for failure to obey a court order.</u>

19
20 IT IS SO ORDERED.

21     Dated:  **January 29, 2016**          /s/ Dennis L. Beck
22                                               UNITED STATES MAGISTRATE JUDGE